(C. D. 1751)

ZALIE LEVIN, SOL WEINBERG, MAX WEINBERG, BELLE G. LEVIN, THELMA WEINBERG, AND LENA L. HOCHMAN, BEING ALL OF THE STOCKHOLDERS OF WOODFORD DISTILLERY, INC., AT THE TIME OF ITS DISSOLUTION *v.* UNITED STATES

United States Customs Court, Third Division

(Decided January 12, 1956)

*Greensfelder, Hemker & Wiese* (*Mark R. Gale* of counsel) for the plaintiffs.
*Warren E. Burger*, Assistant Attorney General (*Richard H. Welsh*, trial attorney), for the defendant.
*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) as *amicus curiae*.

Before EKWALL and JOHNSON, Judges

EKWALL, Judge: This case is directed against the refusal of the collector of customs at the port of St. Louis, Mo., to refund to plaintiffs their alleged share of taxes found to have been paid in excess of the amount due upon an importation of gin at that port. There is no dispute as to the amount nor does the Government deny that refund should be made. The question involved is the proper party or parties entitled to receive such refund.

The imported merchandise consisted of 99 barrels of gin, entered at the port of St. Louis for warehouse for the account of Judge & Dolph, Ltd., of Chicago, Ill. No owner's certificate was filed. All of the merchandise was subsequently withdrawn under three warehouse withdrawals for consumption in the name of Woodford Distillery, Inc., as transferee. The issue resolves itself into a determination of the question of whether the importer of record, Judge & Dolph, Ltd., or the transferee, the Woodford Distillery, Inc., is entitled to the refund in question. Said Woodford Distillery, Inc., has since been dissolved, and its former stockholders appear as parties to this action.

It appears that, upon liquidation, a refund of internal revenue tax and customs duty of $9,941.60 was determined to be due. The collector has refunded $7,158.27 of this amount to Judge & Dolph, Ltd.

The balance of $2,783.33 is still in the collector's custody. Plaintiffs herein claim specifically that, as former stockholders of Woodford Distillery, Inc., they are entitled to one-sixth of the total amount of refunds, by reason of a contract between the dissolved corporation and said Judge & Dolph, Ltd. The balance remaining in the hands of the collector is in excess of the sum plaintiffs claim due them.

Section 557 (b) of the Tariff Act of 1930, as amended by section 22 of the Customs Administrative Act of 1938, the statute here involved, is in the following language:

SEC. 22. (a) Section 557 of the Tariff Act of 1930 (U. S. C., 1934 edition, title 19, sec. 1557) is hereby further amended by inserting before the colon preceding the proviso in the first paragraph thereof the words "or elsewhere, or for transfer to another bonded warehouse at the same port"; by eliminating the phrase "99 per centum of" from the last sentence of the said paragraph; by designating the present paragraphs thereof as subsections (a) and (c), respectively; and by inserting between such subsections a new subsection (b) to read as follows:

(b) The right to withdraw any merchandise entered in accordance with subsection (a) of this section for the purposes specified in such subsection may be transferred upon compliance with regulations prescribed by the Secretary of the Treasury. So long as any such transfer remains unrevoked the transferee shall have, with respect to the merchandise the subject of the transfer, all rights to file protests, and to the privileges provided for in this section and in sections 562 and 563 of this Act which would otherwise be possessed by the transferor. The transferee shall also have the right to receive all lawful refunds of moneys paid by him to the United States with respect to the merchandise and no revocation of any transfer shall deprive him of this right. Any such transfer may be made irrevocable by the filing of a bond of the transferee in such amount and with such conditions as the Secretary of the Treasury shall prescribe, including an obligation to pay all unpaid regular, increased, and additional duties, charges, and exactions on the merchandise the subject of the transfer. Upon the filing of such bond the transferor shall be relieved from liability for the payment of duties, charges, and exactions on the merchandise the subject of the transfer, but shall remain bound by all other unsatisfied conditions of his bond.

(b) On and after the effective date of this Act, this section shall be effective with respect to merchandise entered for warehouse prior to, as well as after, such date.

Plaintiffs' contention is set forth in the brief filed on their behalf and is as follows:

The execution by Judge & Dolph, Ltd., of Customs Form 7505, transferring the exclusive right of withdrawal of the gin to Woodford, and the actual withdrawal of that gin by Woodford, occurred pursuant to a joint venture agreement between Judge & Dolph, Ltd., and Woodford. That agreement provided that Judge & Dolph, Ltd., was to supply the gin and advance the funds for the duty and tax necessary to permit the withdrawal of the merchandise by Woodford. Woodford agreed to bottle and case the gin. The agreement provided that Woodford was to own one-sixth (1/6) of the cased goods and Judge & Dolph, Ltd., the remainder, and that Woodford was to pay Judge & Dolph, Ltd., one-sixth (1/6) of the *cost* of the whole venture. Four items comprised the cost of the venture: (1) the cost of the gin; (2) the tax; and (3) the duty thereon; and

(4) the cost of bottling and casing. When the merchandise was bottled and cased, Woodford, in accordance with the terms of the agreement, accounted to Judge & Dolph, Ltd., for one-sixth (1/6) of the cost of the venture (Exhibit 3). This accounting occurred *prior* to the time the Entry was liquidated and the amount of refund determined so that such accounting was on the basis of the duty and tax paid at the time of the withdrawal of the gin. It is clear, therefore, that Woodford paid one-sixth (1/6) of the amount of the duty and tax, and it is on this basis that Woodford, i. e., its stockholders, claim one-sixth (1/6) of the refund determined. [Italics quoted.]

Plaintiffs' counsel further state in the brief filed:

The facts in the foregoing paragraph were not controverted by the Government, but Government counsel objected to their being received in evidence on the ground that they were immaterial and irrelevant to the issue of *who paid the duty and tax*, that such facts related *only* to the relationship between Judge & Dolph, Ltd., and Woodford, or its stockholders, and had no bearing on the case at bar. [Italics quoted.]

At the trial, counsel entered into the following oral stipulation:

It is hereby stipulated and agreed by and between the parties hereto by their respective counsel:

(1) That the duty and Internal Revenue tax on the liquor covered by the involved warehouse entry number 899, of July 7, 1943, were paid to the United States Collector of Customs through the medium of checks of Judge & Dolph, Ltd., the importer of record herein, drawn on the Continental Illinois National Bank & Trust Co. of Chicago, Ill., which said checks were certified by said bank and made payable to the order of the Collector of Customs, the checks being numbered, dated, and for the indicated number of barrels and for the following amounts:

> 20 Barrels, July 10, 1943, check number 65, $15,453
> 30 barrels, July 16, 1943, check number 99, $23,179.50
> 49 barrels, July 19, 1943, check number 179, $37,867.50

And (2) That said checks were duly received and deposited in the Federal Reserve Bank, St. Louis, Mo., by the Collector of Customs, St. Louis, Mo.

Counsel for the plaintiffs then made the following statement:

Now with respect to that stipulation we might say that as to those items concerning the check numbers, the bank on which drawn and how cleared, the plaintiffs and their counsel have no personal knowledge, but Mr. Welsh has assured us that these are the facts, and we are prepared to concede the same, and do concede that they are accurate.

Counsel for the Government so conceded.

Plaintiffs produced the testimony of the president of the Woodford Distillery, Inc. The defendant introduced one witness, Amanda Struss Boeckenkamp, a former member of the firm of customhouse brokers, who handled the transactions in connection with the entry of the involved merchandise.

That this court has jurisdiction over the question of the right of a transferee, under section 22 of the Customs Administrative Act of 1938, to receive refunds of excessive duties has been held in *Eurasia Import Co., Inc.* v. *United States*, 31 C. C. P. A. (Customs) 202,

C. A. D. 273, reaffirmed in *United States* v. *Eurasia Import Co., Inc.*, 34 C. C. P. A. (Customs) 121, C. A. D. 353. In that case, the transferee purchased the merchandise while it was in warehouse, made withdrawals, and paid the estimated duties. Upon liquidation, it was found that the estimated duties paid by the transferee exceeded the amount due. The *Eurasia Import Co., Inc.*, advised the collector that, as transferee, it was entitled to the refund. The Court of Customs and Patent Appeals, in deciding (1) that this court had jurisdiction of the issue and (2) that the refund was properly payable to the transferee, rather than to the consignee of the merchandise, used the following language:

We have no doubt that section 22 (b) of the Customs Administrative Act was intended to and did modify not only section 557 of the Tariff Act of 1930 but that it modified and, in part, supplanted certain of the regulations above referred to, particularly article 1201 (c), which apparently was applied under the theory that section 22 (b) was not retroactive in a manner affecting the situation existing in this case.

In its brief before us the Government states:

* * * Section 22 of the Customs Administrative Act of 1938 altered the procedure which theretofore obtained with respect to refunds and provided that the refund is properly payable to the transferee. If Section 22 is applicable to the instant transaction, appellant is legally entitled to the refund. If not, the Collector properly made the refund check payable to the original importer.

The foregoing might be construed as a concession on the part of Government counsel that if section 22 (b) be held to be retroactive the appellant's protest here should be sustained, but in fairness to counsel it should be said that while the concession is that appellant would be *legally entitled* to the refund, it is not conceded that recovery may be adjudged in this proceeding because it is contended that the refusal to make the refund to appellant does not present a protestable question within the meaning of section 514.

The new section (22 (b)), after specifically authorizing transfers of the kind made in this case, provides that "So long as any such transfer *remains unrevoked* the transferee shall have * * * *all rights* to file protests * * * which would otherwise be possessed by the transferor." [Italics ours.] Also, it provides that "The transferee *shall also have the right to receive all lawful refunds* of moneys paid by him to the United States with respect to the merchandise and *no revocation* of any transfer shall deprive him of this right * * *." [Italics ours.]

It may be remarked here that in clothing the transferee with the right of protest the statute obviously took that right away from the original importer so long as the transfer remained unrevoked, and if a transferee be entitled to the refund of duties paid by him, of which right no revocation may deprive him, the original importer (the transferor) is certainly excluded from receiving such refund even though the latter's bond originally executed at the time of the warehouse entry be still in the custody of the collector at the time of his final liquidation. [Italics quoted.]

In the above case, the transferee had paid the duties, whereas in the instant case the duties have been paid by checks of Judge & Dolph, Ltd., the importer of record. The Government witness testified that

she personally delivered said checks to the collector's office and that her firm of customs brokers was acting for Judge & Dolph, Ltd., and not for the plaintiffs herein. She further testified that said Judge & Dolph, Ltd., paid the brokerage fee for the withdrawals of this merchandise. On the other hand, Mr. Levin, one of the plaintiffs herein, stated that these checks were delivered to the collector's office at the time of withdrawal of the gin, either by an employee of the plaintiffs or by their customs broker (Mrs. Boeckenkamp's firm), who normally handled such transactions for Woodford. It was stipulated at the beginning of the hearing that the checks in payment for the merchandise were drawn by Judge & Dolph, Ltd., on its own account in the Continental Illinois National Bank & Trust Co. Mr. Levin admitted that he did not remember who handed the checks to the collector, but was certain that it was either an employee of Woodford or that it was the customs broker in St. Louis (who, he stated, acted for Woodford), who handled the mechanics of Woodford's dealings with the collector's office and was paid for its services. He admitted, on cross-examination, that the three checks rendered to and received by the collector did not represent any of the funds of Woodford, nor did he personally instruct Judge & Dolph, Ltd., to mail the checks. However, he testified that Woodford paid one-sixth of the duty and tax as part of its share of the entire cost, including the bottling. As evidence of this payment, a copy of a check voucher was introduced as exhibit 3. This check voucher is in the sum of $10,189.05 and in an attached statement appears the account for which it is stated to be in full settlement. As evidence that Woodford Distillery paid the duty and tax here involved to the customs officials, it is entitled to no evidentiary value.

From this record, it is clear that Woodford Distillery was the transferee for the purpose of withdrawing the merchandise from warehouse and that it made withdrawals. However, plaintiffs have failed to prove that, upon such withdrawals, Woodford Distillery paid the duty and tax. If any part of such money was actually paid by Woodford Distillery, it was solely by reason of a private agreement between the parties, in which the Government is not concerned. However, the record is lacking in proof that any sum was paid to the Government by said Woodford Distillery. The collector is concerned only with the proper party to whom he should, under the provisions of the statute, refund the excess monies collected. So far as this record shows, such party is the one who actually paid such money, to wit, Judge & Dolph, Ltd. This court has no jurisdiction over questions involving rights under whatever private contract the parties may have entered into; nor are the terms of any such agreement or contract in evidence.

For the foregoing reasons, plaintiffs' claims are overruled.